IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


MICHAEL STRONG, )
                                )
                 Plaintiff, )
                                )
      vs. )
                                  )
CAROLYN W. COLVIN, acting Commissioner )
of the Social Security Administration, )
                                  )      No. 3:15-cv-0051-HRH
                 Defendant. )
_____)

<u>O R D E R</u>

        This is an action for judicial review of the denial of disability benefits under Title XVI

of the Social Security Act, 42 U.S.C. §§ 1381-1383f. Plaintiff has timely filed his opening

brief,[1] to which defendant has responded.[2] Although plaintiff requested oral argument,[3]

rather than granting plaintiff's request, the court gave the parties leave to file supplemental

briefing on the credibility issue,[4] which plaintiff raised for the first time in his reply brief.

---

[1]Docket No. 14.

[2]Docket No. 15.

[3]Docket No. 20.

[4]Order from Chambers at 1, Docket No. 21.

-1-

The parties have timely filed their supplemental briefs.[5]

Procedural Background

Plaintiff is Michael Strong. Defendant is Carolyn W. Colvin, acting Commissioner of Social Security.

On April 18, 2012, plaintiff filed an application for disability benefits under Title XVI of the Social Security Act. Plaintiff alleged that he became disabled on March 1, 2012. Plaintiff alleged that he is disabled because of back, knee, and shoulder pain, carpal tunnel, and hyperactive disorder. Plaintiff's application was denied initially and upon reconsideration. After a hearing on July 17, 2013, an administrative law judge (ALJ) denied plaintiff's claims. On June 29, 2015, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's September 5, 2013 decision the final decision of the Commissioner. On March 26, 2015, plaintiff commenced this action.

General Background

Plaintiff was born on January 24, 1959. He was 54 years old at the time of the hearing. Plaintiff has a GED and attended community college for two years. Plaintiff is single and at the time of the hearing was living with a friend. Plaintiff's past work includes work as a store clerk, a case aide, a semi-truck driver, and a short-order cook.

---

[5]Docket Nos. 22 & 23.

The ALJ applied the five-step sequential analysis used to determine whether an individual is disabled.[6]

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since April 18, 2012, the application date...."[7]

At step two, the ALJ found that plaintiff had "the following severe impairments: degenerative disc disease of the lumbar spine; osteoarthritis of the bilateral shoulders status

---

[6]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work?  If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... h[im] to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[7]Admin. Rec. at 12.

post bilateral torn rotator cuff repair surgery; status post carpal tunnel release surgery on the right upper extremity; osteoarthritis of the bilateral knee; attention deficient disorder; [and] bipolar disorder...."[8]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments...."[9] The ALJ considered Listing 1.02 (major dysfunction of a joint due to any cause); Listing 1.04 (disorders of the spine); and Listing 12.04 (affective disorders). The ALJ considered whether plaintiff met the paragraph B criteria and concluded that he did not because plaintiff had mild restrictions in activities of daily living; moderate difficulties with social functioning; moderate difficulties with regard to concentration, persistence, or pace; and no episodes of decompensation, which had been of extended duration.[10] The ALJ also considered whether plaintiff met the paragraph C criteria and concluded that plaintiff did not.[11]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC."  Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009).

---

[8]Admin. Rec. at 12.

[9]Admin. Rec. at 12.

[10]Admin. Rec. at 14.

[11]Admin. Rec. at 15.

The ALJ found that plaintiff had the residual functional capacity

> to perform light work as defined in 20 CFR 416.967(a) except
> that claimant is further limited to: frequent stooping, kneeling,
> crouching, crawling, and climbing of ladders, ropes or scaf-
> folds; frequent bilateral overhead reaching; unlimited reaching
> in all other directions; avoiding concentrated exposure to
> extreme cold, excessive vibration and hazardous machinery;
> one-to-two step tasks that are simple, routine and repetitive;
> and work that involves only occasional interaction with the
> general public and coworkers.[12]

The ALJ found plaintiff's pain and symptom statements less than credible because as to his physical limitations, "the medical evidence of record does not fully support the claimant's allegations of entirely debilitating symptoms."[13] The ALJ noted in particular that plaintiff's "condition improved with surgical intervention[.]"[14]   Similarly, as to the limitations flowing from his mental impairments, the ALJ found that "the medical evidence of record does not fully support the claimant's allegations of entirely debilitating symptoms."[15] In particular, the ALJ noted that claimant's "condition appreciably improved once he obtained treatment" for his mental impairments.[16]

--------

[12]Admin. Rec. at 15.

[13]Admin. Rec. at 16.

[14]Admin. Rec. at 17.

[15]Admin. Rec. at 18.

[16]Admin. Rec. at 18.

The ALJ gave great weight[17] to Dr. Hallenburg's opinion[18] and to Dr. Bay's opinion.[19]

---

[17]Admin. Rec. at 19.

[18]On May 7, 2010, Kris Hallenburg, Ph.D., evaluated plaintiff.  Dr. Hallenburg opined that plaintiff

> would be able to manage his funds and perform simple, repetitive tasks.  It is unclear whether he would be able to do detailed or complex tasks.  His temper and impulsivity have interfered with his keeping jobs.  He was able to work best when he was able to keep his own schedule and was self-employed.  He seems to perceive slights from others easily, and that has interfered with getting along with coworkers and bosses.  He is able to keep a regular schedule, as evidenced by his activities of daily living now.  He has put a considerable amount of effort into avoiding people and conflicts, and keeping his temper.

Admin. Rec. at 403.

[19]On July 24, 2012, Rebecca Bay, M.D., did a mental status exam which showed that plaintiff was

> [n]eat, clean, weather and age appropriate.  Attitude:  Initially guarded, then cooperative, friendly. Speech: Regular rate and rhythm and volume.  Normal prosody.  Neither poverty of content nor excessive detail.  Behavior:  No psychomotor agitation or retardation noted.  No abnormal movements or gait concerns.  Mood is reported okay "rated as 7-8/10 with 10 being the best."   Affect is full unrestricted and congruent. Thought Process:  Linear, logical and goal directed.  Thought content:  No obvious delusions.  Does not endorse SI, HI or violent preoccupation.  Perception, denies both AH and VH. Does not appear to be responding to internal stimuli.  Cognition appears to be average.  He was aware that proverbs are not concrete.  Able to do serials 7s perfectly and apples and

(continued...)

The ALJ also gave great weight[20] to Dr. Sanford's opinion.[21] The ALJ gave some weight[22]

to Dr. Taubenfeld's opinion.[23] The ALJ gave great weight[24] to Dr. Perry's opinion.[25] And,

---

[19](...continued)

oranges are both fruits. Insight and judgment are fair to good.

Admin. Rec. at 434.

[20]Admin. Rec. at 20.

[21]On August 1, 2012, Dave Sanford, Ph.D., opined that plaintiff was moderately limited in his ability to understand/remember/carry out detailed instructions; to work in coordination with or in proximity to others without being distracted by them; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. Admin. Rec. at 106-107.

[22]Admin. Rec. at 20.

[23]On November 17, 2011, Wayne Taubenfeld, Ph.D., did a learning disorder, cognitive, and psychological assessment of plaintiff. Dr. Taubenfeld opined that an employer would need to make the following accommodations for plaintiff:

1.    Provide a list of tasks to be completed or a "To Do" list daily[.]
2.    Allow client to use word processor with spell check and grammar check[.]
3.    Allow client extended training period if necessary.
4.    Provide client with extra time to complete tasks[.]
5.    Client might require additional breaks initially.

Admin. Rec. at 420.

[24]Admin. Rec. at 19.

[25]On June 1, 2010, DeWayde C. Perry, M.D. examined plaintiff. Dr. Perry opined that plaintiff was not limited in terms of walking, standing, sitting, carrying, and lifting and that he had no postural, environmental, or manipulative limitations. Admin. Rec. at 408.

the ALJ gave great weight[26] to Dr. Vestal's opinion.[27]

The ALJ considered the third-party lay opinions[28] but gave them little weight because they "essentially mirror the claimant's allegations in this case," which the ALJ had found to not be fully credible.[29]

At step four, the ALJ found that plaintiff "has no past relevant work...."[30]

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform[,]" including assembler, basket filler,

---

[26]Admin. Rec. at 20.

[27]On August 1, 2012, Robert E. Vestal, M.D., opined that plaintiff could occasionally lift/carry 20 pounds; frequently lift/carry 10 pounds; stand/walk for 6 hours in an 8-hour day; sit for 6 hours in an 8-hour day; could frequently climb ladders/ropes/scaffolds; could frequently stoop, kneel, crouch, and crawl; could occasionally reach overhead bilaterally; and should avoid concentrated exposure to extreme cold, vibration, and hazards. Admin. Rec. at 104-106.

[28]On March 30, 2012, Thomas Lynch, a friend of plaintiff's, completed a third-party function report. Admin. Rec. at 236-243. On July 10, 2012, Christy Sumner, a friend of plaintiff's, completed a third-party function report. Admin. Rec. at 271-278.

[29]Admin. Rec. at 20.

[30]Admin. Rec. at 20. The ALJ considered plaintiff's past work but did not find that any of it was "relevant" work. "Relevant work" is work that has been done "within the last 15 years, lasted long enough for you to learn to do it, and was substantial gainful activity...." SSR 82-62. Plaintiff suggests in a footnote that this may have been an error, but to the extent that it was, it would be harmless error as the ALJ proceeded to step five of the sequential analysis. See Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008) ("Although the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five").

and cleaner.[31]  This finding was based on the testimony of the vocational expert.[32]

Thus, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, since April 18, 2012, the date the application was filed...."[33]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...."  The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards."  Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'"  Id. (quoting Andrews, 53 F.3d at 1039).  If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the

---

[31]Admin. Rec. at 21-22.

[32]William Weiss testified as the vocational expert. Admin. Rec. at 65-71.

[33]Admin. Rec. at 22.

-9-

Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred because she failed to consider the combined impact of his mental and physical limitations at all stages of the five-step sequential analysis. The ALJ found that plaintiff's severe impairments were lumbar disc disease, post status bilateral shoulder surgery, post status carpal tunnel, ADHD, and bipolar disorder. Pursuant to 20 C.F.R. § 416.923, the ALJ must, if she "find[s] a medically severe combination of impairments," consider "the combined impact of those impairments ... throughout the disability determination process." As explained in SSR 86-8, this means that the ALJ

> [w]hen assessing the severity of multiple impairments, ... must evaluate the combined impact of those impairments on an individual's ability to function, rather than assess separately the contribution of each impairment to the restriction of function as if each impairment existed alone. When multiple impairments, considered in combination, would have more than a minimal effect on the ability to perform basic work activities, adjudication must continue throughout the sequential evaluation process.

Plaintiff argues that the ALJ failed to do this, however, because she evaluated the paragraph B criteria of Listing 12.04 without reference to the combined effect of plaintiff's

physical and mental impairments. Rather, plaintiff contends that the ALJ analyzed the

paragraph B criteria as if plaintiff had no physical impairments.

In order to meet or equal Listing 12.04, the listing for affective disorders, a claimant

must satisfy the criteria of both paragraph A and paragraph B. Paragraph A requires

> [m]edically documented persistence, either continuous or
> intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the
> following:
>
> a. Anhedonia or pervasive loss of interest in almost all activi-
> ties; or
>
> b. Appetite disturbance with change in weight; or
>
> c. Sleep disturbance; or
>
> d. Psychomotor agitation or retardation; or
>
> e. Decreased energy; or
>
> f. Feelings of guilt or worthlessness; or
>
> g. Difficulty concentrating or thinking; or
>
> h. Thoughts of suicide; or
>
> i. Hallucinations, delusions, or paranoid thinking; or
>
> 2. Manic syndrome characterized by at least three of the
> following:
>
> a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking; or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04. Paragraph B requires that the paragraph A diagnostic findings must have resulted in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration[.]

Id.

The ALJ considered whether plaintiff met the paragraph B criteria. As for restriction

of activities of daily living, the ALJ found that plaintiff

> did not allege a wealth of limitations in the area of activities of daily living, and of the issues that the claimant did allege, most, if not all, of those alleged limitations stem from the claimant's physical, and not mental, impairments.... In addition, the medical evidence and the claimant's reported abilities do not indicate that the claimant has more than a mild restriction in the area of activities of daily living due to his mental impairments.[34]

As for difficulties in maintaining social functioning, the ALJ found that plaintiff had "no more than moderate difficulties in the area of social functioning due to his mental impairments."[35] And, as for difficulties in maintaining concentration, persistence or pace, the ALJ explained that "based on th[e] combined evidence, I find that the claimant has no more than moderate difficulties in this functional area due to his mental impairments."[36]

Plaintiff acknowledges that the Listing uses the phrase "resulting in" when tying paragraph A findings to the paragraph B criteria. Plaintiff also acknowledges that the preface to the Listing provides that "[t]he functional limitations in paragraph[] B ... must be the result of the mental disorder described in the diagnostic description, that is manifested by the medical findings in paragraph A." But, plaintiff argues that what this means is that when the ALJ is considering whether a claimant's condition is the equivalent

---

[34]Admin. Rec. at 14.

[35]Admin. Rec. at 14.

[36]Admin. Rec. at 14.

of the Listing, as opposed to meeting the Listing,[37] the ALJ can consider the combined effects of mental and physical impairments, and not just the claimant's mental impairments.

Plaintiff's argument is directly contrary to 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A), which provides that "[t]he functional limitations in paragraphs B and C must be the result of the mental disorder described in the diagnostic description, that is manifested by the medical findings in paragraph A." In other words, the regulation states that the ALJ's consideration of the paragraph B criteria is limited to the consideration of a claimant's mental impairments. The regulation makes no distinction between whether the ALJ is considering whether a listing is met or equaled, and the court cannot read such a distinction into the regulation. Thus, it was not error for the ALJ to not consider plaintiff's physical impairments when she was determining whether plaintiff met the paragraph B criteria.

Plaintiff next argues that the ALJ erred in finding his pain and symptom statements less than credible.[38] "An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible." Garrison v.

_____

[37]To meet a Listing, a claimant must establish that he meets each characteristic of the Listing. Tacket, 180 F.3d at 1099. To equal a Listing, a claimant must show symptoms, signs, and laboratory findings that are "at least equal in severity and duration" to the characteristics of the Listing. Id.

[38]The court declines to consider this argument waived.

Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "'First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). "In this analysis, the claimant is not required to show 'that h[is] impairment could reasonably be expected to cause the severity of the symptom []he has alleged; []he need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)). "Nor must a claimant produce 'objective medical evidence of the pain or fatigue itself, or the severity thereof.'" Id. (quoting Smolen, 80 F.3d at 1281). "If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" Id. at 1014-15 (quoting Smolen, 80 F.3d at 1281). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" Id. at 1015 (quoting Moore v. Comm'r of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)). "In evaluating the claimant's testimony, the ALJ may use 'ordinary techniques of credibility evaluation.'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Turner v. Comm'r of Social Sec., 613 F.3d 1217, 1224 n.3 (9th Cir. 2010)). "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and

the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms[.]" Id. (internal citations omitted).

It was the court's initial perception that the ALJ had given only one reason for finding plaintiff's pain and symptom statements less than credible, namely that plaintiff's statements were not supported by the objective medical evidence.[39] And while this was a clear and convincing reason, "a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain" and symptoms. Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). However, as defendant has pointed out, the ALJ also found plaintiff's pain and symptom statements less than credible because they were not supported by the opinion evidence, plaintiff's treatment was conservative, and plaintiff reported medical improvement.

As for the opinion evidence, the ALJ noted, in connection with plaintiff's claims about his shoulder pain, that Dr. Perry opined that plaintiff had no manipulative limitations and no limitations as to lifting or carrying objects.[40] The ALJ also noted, in connection with plaintiff's claims of low back and knee pain, that Dr. Perry opined that

---

[39]Order from Chambers at 1, Docket No. 21.

[40]Admin. Rec. at 408.

plaintiff had no limitations as to standing/walking and lifting/carrying objects.[41]  And, the ALJ noted that Dr. Hallenburg opined that despite plaintiff's mental impairments, plaintiff was capable of performing simple and repetitive tasks.[42]  The lack of supporting opinion evidence was a clear and convincing reason to find plaintiff's pain and symptom statements less than credible.  See Batson v. Comm'r of the Social  Sec. Admin., 359 F.3d 1190, 1196-97 (9th Cir. 2004) (considering the lack of opinions supporting Batson's claimed limitations when assessing credibility).

As for conservative treatment, the ALJ noted that plaintiff "testified that he only took Ibuprofen 'once in a while' to treat his shoulder pain...."[43]  And, the ALJ noted that based on a January 2012 MRI of plaintiff's back which showed "only 'mild' degenerative changes," Dr. Garner, plaintiff's primary care physician, "recommended only conservative treatment modalities that included core strengthening exercises."[44]  "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."  Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (quoting Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995)).  The fact that plaintiff received conservative

[41]Admin. Rec. at 17.

[42]Admin. Rec. at 18.

[43]Admin. Rec. at 17.

[44]Admin. Rec. at 17.

treatment was a clear and convincing reason to find his pain statements less than credible.

And as for plaintiff's self-reports, the ALJ noted that plaintiff's own reports showed that his symptoms flowing from his mental impairments improved with medication and treatment,[45] which contradicted his "allegations of entirely debilitating mental health symptoms."[46] An ALJ may discount credibility on the basis of medical improvement. Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). And, "contradictions between claimant's testimony and the relevant medical evidence" can be a clear and convincing reason for the ALJ to reject a plaintiff's subjective symptom testimony. Johnson, 60 F.3d at 1434. Thus, plaintiff's self-reports of medical improvement were a clear and convincing reason to find plaintiff's symptom statements less than credible.

Although the ALJ primarily relied on the lack of objective medical evidence supporting plaintiff's statements, she gave three other clear and convincing reasons for finding plaintiff's pain and symptom statements less than credible. Thus, the ALJ did not err in finding plaintiff's pain and symptom statements less than credible.

Finally, plaintiff argues that the ALJ erred because the hypothetical the ALJ gave the vocational expert did not adequately set out his impairments as to reaching, crawling,

---

[45]Admin. Rec. at 432, 455, 467, 556, 574, 586 & 641.

[46]Admin. Rec. at 18.

stooping, memory, and getting along with others. "The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out <u>all</u> the limitations and restrictions of the particular claimant.'" <u>Valentine v. Comm'r Social Sec. Admin.</u>, 574 F.3d 685, 690 (9th Cir. 2009) (quoting <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988)). "[A]n RFC that fails to take into account a claimant's limitations is defective." <u>Id.</u> "It is, however, proper for an ALJ to limit a hypothetical to those impairments that are supported by substantial evidence in the record." <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1165 (9th Cir. 2001).

<u>stooping, crawling, and reaching</u>

Plaintiff first contends that the ALJ erred in finding that he could frequently stoop, crawl, and reach. Plaintiff argues that the medical evidence of record suggests that he is much more limited in these areas. Plaintiff points out that during the past seven years he has had surgery on both shoulders and carpal tunnel surgery and that he testified that he is limited in terms of flexibility and suffers significant pain.[47] Plaintiff also points out that his most recent physical examination by Dr. Hess noted pain and crepitus when he raised and extended both arms.[48] Plaintiff also argues that the ALJ's finding that he could frequently stoop, crawl, and reach was at odds with his testimony about the effect his limitations, particularly the medications that he takes, impose on his daily activities.

_____

[47]Admin. Rec. at 46-50.

[48]Admin. Rec. at 653-654.

The ALJ's finding that plaintiff could frequently stoop, crawl, and reach was supported by substantial evidence. The ALJ expressly considered Dr. Hess' evaluation, noting that

> in June 2013, Phillip Hess, M.D., examined the claimant and noted that the while the claimant did display some crepitus with abduction and full extension of the bilateral shoulders, the claimant nevertheless had normal range of motion and no signs of impingement. Furthermore, Dr. Hess noted that the claimant displayed no evidence of numbness, tingling, burning or weakness in the bilateral upper extremities.[49]

Dr. Hess's examination, along with Dr. Perry's and Dr. Vestal's opinions, constitute substantial evidence supporting the ALJ's finding as to plaintiff's ability to stoop, crawl, and reach. As for the effect his medication had on his ability to function, plaintiff testified that his medications gave him a dry mouth and disturbed his sleep patterns.[50] But this testimony does not suggest that the side effects plaintiff was experiencing were significantly interfering with his ability to carry out his daily activities. And as for plaintiff's statements about his significant pain, the ALJ properly found those statements less than credible.

<u>memory</u>

The ALJ found that plaintiff was limited to simple, routine, and repetitive work that

---

[49]Admin. Rec. at 17 (internal citations omitted).

[50]Admin. Rec. at 45-46.

involved only one-to-two step tasks.  Plaintiff argues that this finding did not adequately capture his limitations due to memory.  Plaintiff argues that his 2010 consultative examination with Dr. Hallenburg showed that he had more problems with short-term memory than the ALJ's hypothetical included.  At that examination, plaintiff was only able to remember one word out of four after five minutes, although he succeeded at serial 7s and remembered his home address.[51]  Plaintiff also points out that at his 2011 psychological exam by Dr. Taubenfeld, he scored "extremely ... poor ... on tests of memory" and that Dr. Taubenfeld noted that persons such as plaintiff would "need to be supervised closely and persistently with frequent reminders about limits, expectations, and job requirements."[52]  Plaintiff also points out that he reported that he missed medical appointments because he forgot to call in[53] and that he needed multiple reminders in order to take care of personal needs and grooming.[54]

The ALJ's finding that plaintiff was limited to simple, routine, and repetitive work that involved only one-to-two step tasks was supported by substantial evidence.  The ALJ expressly considered Dr. Hallenburg's examination, stating that

---

[51]Admin. Rec. at 401-402.

[52]Admin. Rec. at 523.

[53]Admin. Rec. at 39.

[54]Admin. Rec. at 295.

> [w]hile I recognize that on examination the claimant was only able to recall one out of four words after a five-minute delay, the claimant was nevertheless able to spell the word "house" both forwards and backwards, and he was also able to recall his home address from two years prior.[55]

The ALJ also noted that "based upon her psychological examination and the objective medical findings ascertained therefrom, Dr. Hallenburg opined that, despite his mental impairments, the claimant was able to perform simple, repetitive tasks.[56] Thus, although Dr. Hallenburg noted that some memory problems showed up in her mental status exam of plaintiff, she still opined that plaintiff retained the ability to perform simple and repetitive tasks. As such, Dr. Hallenburg's examination and opinion provide substantial evidence in support of the ALJ's RFC. As for Dr. Taubenfeld's examination and opinion, plaintiff is correct that Dr. Taubenfeld found that plaintiff had memory issues, but as the ALJ noted, plaintiff's "ability to concentrate, organize, remember and attend to tasks substantially improved with medication and treatment, all of which occurred after Dr. Taubenfeld rendered his opinions."[57] As for plaintiff's subjective testimony about his memory problems, as discussed above, the ALJ properly found that plaintiff's testimony was not entirely credible.

---

[55]Admin. Rec. at 18.

[56]Admin. Rec. at 403.

[57]Admin. Rec. at 20.

Plaintiff also argues that the ALJ should have given more attention to his job as a "detox technical trainer." Plaintiff worked the graveyard shift as the intake person and his job was to enter data and complete reports. Plaintiff worked at the detox center for two months.[58] He contends that he lost this job because he failed to get his work done. Because this was at a time when he was receiving mental health treatment, plaintiff argues that this shows that he was not able to do simple, routine, and repetitive tasks.

The ALJ did not err in failing to give this job more attention as there is no evidence that plaintiff actually lost this job because he failed to get his work done. Although plaintiff testified that he was fired from this job, he did not testify that it was because he was not getting his work done. Rather, plaintiff testified that he was told that "I wasn't a good fit. That there had been some issues with following protocols and not following directions."[59]

anger

The ALJ found that plaintiff was limited to work that involved only occasional interaction with the general public and coworkers.[60] Plaintiff argues that the ALJ should have found him more limited in his ability to get along with others and that the ALJ failed to adequately consider that his anger issues make it difficult for him in the workplace.

---

[58]Admin. Rec. at 64.

[59]Admin. Rec. at 64.

[60]Admin. Rec. at 15.

Plaintiff contends that this is most clearly set out in Dr. Hallenburg's exam. Plaintiff told Dr. Hallenburg that "a week ago ... he became agitated at a woman in the Alcoholics Anonymous office telling him what to do, and he had done her job before and he did not think [that] was appropriate. He cite[d] a number of jobs he has lost because of having impulsive anger."[61] Plaintiff also points out that Dr. Hallenburg noted that "[i]t is unclear where the symptoms of temper fall, but it could be attributed partly to impulsivity and possibly to some type of mood disorder that includes depression as well. He has had lifelong learning problems that have interfered with jobs and relationships."[62] Plaintiff also contends that his counseling records suggest that his interpersonal problems with anger continued into 2013.[63]

The primary evidence of plaintiff's anger causing an inability to get along with others is plaintiff's subjective statements, statements which the ALJ properly found not entirely credible. As for plaintiff's reliance on his counseling records, the "interpersonal problems" to which plaintiff refers were with his partner and not with coworkers or the general public. Moreover, plaintiff reported to his counselor that he was making progress

---

[61]Admin. Rec. at 398.

[62]Admin. Rec. at 403.

[63]Admin. Rec. at 600, 601 & 605.

in terms of managing his anger and irritability.[64] The ALJ adequately took plaintiff's anger issues into account in her RFC.

<u>failure to inquire</u>

Plaintiff makes a general argument that the ALJ failed to adequately inquire about his memory problems and anger issues. Plaintiff suggests that the ALJ failed to adequately develop the record to determine why he had such a systematic problem in getting and holding jobs during the past few years. Plaintiff contends that the ALJ should have asked questions about why he had lost so many jobs over the years, particularly since he was unrepresented at the hearing. Plaintiff insists that the ALJ simply did nothing to determine what was keeping him from working.

"The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting <u>Smolen</u>, 80 F.3d at 1288). "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" <u>Id.</u> (quoting <u>Smolen</u>, 80 F.3d at 1288).

The ALJ did not fail to develop the record here. There was not any ambiguous evidence nor did the ALJ make a finding that the evidence of record inadequate. Plaintiff

---

[64]Admin. Rec. at 606.

simply believes that the ALJ should have asked him more questions at the hearing about why he could not keep a job, but the ALJ had no such obligation because there was sufficient evidence in the record as to why plaintiff had lost his various jobs.[65]

<u>Conclusion</u>

Based on the foregoing, the decision of the Commissioner is affirmed. The clerk of court shall enter judgment dismissing plaintiff's complaint with prejudice.

DATED at Anchorage, Alaska, this 19th day of April, 2016.

/s/ H. Russel Holland
United States District Judge

---

[65]Admin. Rec. at 60-61, 64, 292, 398 & 416.